## Commonwealth v. Hamilton et al.

*Crimes — Witnesses — Grand jury — Incompetent testimony — Motion to quash indictment—Act of March 31, 1860.*

1. An indictment which charged conspiracy, larceny by bailee and misdemeanor was quashed on motion where it appeared that the only witness who testified before the grand jury was not legally sworn because his name was not endorsed upon the bill of indictment, that the witnesses whose names were endorsed upon the bill of indictment did not appear, and that there was nothing but hearsay evidence testified to by the witness who did appear.

2. Testimony which would be incompetent at a trial is incompetent before the grand jury and cannot support an indictment.

3. Under section 10 of the Act of March 31, 1860, P. L. 427, 433, only those witnesses whose names have been endorsed by the district attorney on the bill of indictment can be sworn and testify before the grand jury.

4. An indictment has such a serious effect upon a person's reputation that absolute precision and compliance with the law must not be sacrificed to dispatch.

Indictment: Conspiracy, larceny by bailee and misdemeanor. Q. S. Allegheny Co., April Sess., 1921, No. 556.

*Harry A. Estep*, Assistant District Attorney, for Commonwealth.

*Sidney J. Watts*, for Robert L. Hamilton.

*Samuel Milliken*, for Joseph Dwyer.

DOUGLASS, J., June 2, 1923.—This is a motion to quash an indictment returned by the grand jury at the above number and term, wherein the defendants are charged with conspiracy, larceny by bailee and misdemeanor.

This case, together with many others, grew out of an accusation upon part of the Commonwealth that the defendants entered into a conspiracy to commit a crime by defrauding the Pennsylvania Railroad Company in connection with certain passenger railroad tickets which the said defendants were alleged to have converted to their own use and then to have redeemed and converted the money received from said redemption.

This case was originally tried and resulted in a disagreement upon the part of the jury sworn to try the case.

Prior to the swearing of the jury at the trial, a motion was made before the trial judge to quash the indictment on account of certain alleged incompetent testimony having been used for the purpose of finding the said indictment. At that time this question was a matter which was entirely *dehors* the record, and the court refused to quash the indictment and stated that application should have been made and the case placed upon the argument list for the purpose of taking testimony to enlighten the court.

Commonwealth *v.* Hamilton et al.

An examination of the indictment shows that the witnesses whose names appear upon the said indictment as witnesses for the Commonwealth are J. S. McGinley, an Assistant County Detective of Allegheny County, the prosecutor in this case; F. R. Dunn and Robert Campbell. When the case was originally tried, both Dunn and Campbell testified that they had never appeared before the grand jury, and it was admitted upon the part of the Commonwealth also that J. S. McGinley did not testify and made information simply upon the direction of his superior officer, the Chief of the County Detectives of Allegheny County.

When the case was again placed upon the list for trial, and a considerable time before the day fixed for trial, counsel for the defendant renewed their motion to quash the indictment. The court thereupon directed that testimony be taken for the purpose of determining and investigating the nature and character of the evidence which was before the grand jury at the time the indictment was found. When, in accordance with the direction of the court, a hearing was held and testimony was taken, it was admitted upon the part of the Commonwealth that neither J. S. McGinley, F. R. Dunn nor Robert Campbell, the three persons whose names appeared upon the indictment as witnesses for the Commonwealth, had ever appeared before the grand jury. At this hearing the Commonwealth produced upon the stand as a witness one Robert S. Judge, who testified that he had appeared before the grand jury and given testimony in connection with the matters contained in this indictment. It was shown also that the said Robert S. Judge had never been sworn in open court, but was presumably sworn at the time he gave his testimony before the grand jury. He further testified that at the time he testified before the grand jury, the only information he had concerning the matters set up in this indictment was information which he had received from other persons, and was, therefore, hearsay testimony. The witness was permitted only to testify to the fact that he had appeared and testified before the grand jury as to the source of his information, but was not permitted to testify as to what evidence he had given to the grand jury. As a result of the hearing, we are confronted by the amazing fact that this indictment was found without there being the slightest shred of competent testimony before it. The testimony taken at this hearing shows that none of the three witnesses whose names are on the indictment ever appeared before the grand jury, and also that Robert S. Judge testified before the grand jury when his name did not appear upon the subpœna as a witness for the Commonwealth.

By the Act of March 31, 1860, § 10, P. L. 427, it is provided: "The foreman of any grand jury, or any member thereof, is hereby authorized and empowered to administer the requisite oaths or affirmations to any witness whose name may be marked by the district attorney on the bill of indictment."

Clearly the grand jury had no right to swear Robert S. Judge for the purpose of testifying before the said grand jury, and even though they went through the formality of administering the oath to the witness, nevertheless the fact remains that his testimony before the grand jury, in so far as the law is concerned, was unsworn testimony. In addition to that, it is the uncontradicted evidence that any testimony which he did give before that grand jury was simply hearsay evidence, which he gave upon information which he had received from other persons and which could not, under any circumstances, be considered as competent evidence upon which to base an indictment charging a person with a crime.

Objection was made at the time of this hearing by the Commonwealth to the ruling of the court permitting the witness Judge to testify to his appearance

4 D. & C.

before the grand jury and the source of his information, the Commonwealth basing its objection upon the ground that the grand jury being a secret deliberative body, any of the deliberations or proceedings of the grand jury are, therefore, secret and shall not be inquired into.

This would be true if an attempt were being made to bring to the public eye the manner in which the grand jurors voted or any discussions which they had among themselves, because the grand jurors are sworn to keep secret "the Commonwealth's counsel, your fellows' and your own." This hearing, however, was being held for the purpose of enlightening the court upon the question as to whether or not there was any competent evidence before this grand jury upon which this indictment could be based, and went to the very core of the determination of the question as to whether or not justice, or an injustice, had been done to these defendants.

In a recent work on "Trial by Juries," by the present learned Chief Justice of this State, we find this quotation in connection with investigations of this kind: "Yet what took place in their investigations may be judicially inquired into where necessary to advance the cause of truth and justice." And the learned author in support thereof cites Gordon v. Com., 92 Pa. 216, and Com. v. Green, 126 Pa. 531.

In the latter case the court permitted a member of the grand jury to testify that the evidence upon which an indictment was found charging the defendant with keeping a bawdy-house was based upon information which the grand jury received in passing upon the question whether or not an indictment should be returned charging that an assault took place in the house of the defendant Green. In connection with the indictment for assault and battery, the grand jury received information which led them to believe that the defendant Green was conducting a bawdy-house, and thereupon they returned an indictment charging this offence. The court permitted the foreman of the grand jury to convey this information to the court for the purpose of enlightening it in the determination of the question as to whether or not the cause of truth and justice was being advanced.

In summing up the testimony taken in connection with this motion to quash, we are confronted by the following facts:

1. The only witness who testified before the grand jury was not legally sworn, because his name was not introduced upon the bill of indictment.

2. The witnesses whose names are introduced upon the bill of indictment never appeared nor gave testimony before the grand jury in connection therewith; and

3. The only witness who did appear before the grand jury testified only to hearsay evidence and nothing else.

The foreman of the grand jury, or the members thereof, are only authorized to administer oaths to and receive the testimony of those witnesses whose names are endorsed upon the bill of indictment by the district atttorney.

In Com. v. Wilson, 9 Pa. C. C. Reps. 24, we also find this quotation: "We may assume from what was said on the argument that the witness was sworn by the foreman or some member of the grand jury; but if the grand jury had no authority to administer the oath, their action was as irregular as if they had examined witnesses without swearing them, which has been held sufficient ground for quashing the indictment." See, also, Com. v. Leisenring, 2 Pearson, 466; Com. v. Price, 3 Pa. C. C. Reps. 175; Jillard v. Com., 26 Pa. 169.

The finding of an indictment against a person, charging a crime, is a matter of serious importance to the person thus sought to be accused, and the reputation of that person in the community in which he resides is of such import-

ance as to call upon his accusers to be actuated only by testimony which is competent and which testimony being unexplained might be reasonable and probable cause for a petit jury, trying the case by virtue of such indictment, to return a verdict of guilty as indicated.

While it is true that in large counties like Allegheny County, where many crimes are committed, it is necessary for the grand jury to work with dispatch in connection with the business which is presented to them, yet, at the same time, the seriousness of the effect of an indictment upon the reputation of a person charged with crime is such that dispatch must not be used at the sacrifice of precision and absolute compliance with the law of the Commonwealth.

For the reasons hereinbefore set forth, we are of opinion that the indictment in this case was upon unsworn and incompetent testimony, and must, therefore, be quashed.

From Edwin L. Mattern, Pittsburgh, Pa.